And we will call the next case please. Number 317-0291, Cheryl Shaw is a three year old estate of Roy L. Green, deceased athlete by Robert A. Stewart, Jr. vs. John Brett Cappellans by Jeffrey A. Reardon. Mr. Reardon. The case comes out of a long standing probate case that I actually have been involved in the will contest part of it and kind of got in for Mr. Brett's at the tail end. Basically we filed objections to the proposed final report and about six months earlier there had been a hearing that approved an interim report that went back and covered a couple of years. Basically when we filed the objection the estate and the trustees moved to strike and ultimately after a number of hearings the end result was that the trial judge said it was res judicata. And basically what the question here before the court is did we have to file something within 30 days of when that interim order occurred on April 24th of 15, either appeal it, move to reconsider it or object at that point or could we wait until the proposed final report was submitted and then file and not only attack the report for the period of time from April through October but all the way back for the entire period of the estate trust. Under your theory when will these cases ever end? Can't somebody just keep coming and then you bring another objector in when this is over? No, this was something the trial judge had asked me because she apparently had one when we were in court. She said I'm dealing with one where somebody died in 1927. I said no, that's not what we have here and I think it's especially because the cases seem to say certainly this would be a different situation if we had let the final report go through and get that approved. I know there are some cases that say you can't wait two years after the final report and then come charging in and stir up a horn in its nest. But what we're saying is that there's authority and you probably saw in the briefs there's this old Marshall case from the Illinois Supreme Court that says when you have interim accounts you can't wait until the end. You can wait until the final report is submitted and then ask for surcharges or equitable apportionment or some type of theory for an audit to look at the estate. Now, I will agree that we have kind of a little bit of a mess here because the 4th District has said in this, they have two cases, Auschwitz, if I'm pronouncing it right, K-A-N-F-E-R from the 4th District and what they say is that a Marshall's no good because the statutes intervened back in 1940 or 1939. Now, there's 1st District authority. Actually, the Berger case that's in the Kanfor case, the 4th District said they're not going to follow the 1st District. That's Berger and Berger cited this old Marshall case from the Illinois Supreme Court from 1900 and said you can effectively wait. On top of that, there's this Herlinda case out of the 1st District that makes it sound like if we had tried to appeal in April, we do have to wait. So, we're kind of in a quandary here. My view is that the Illinois Supreme Court case is still good until they say it's no good and at this point, especially because if there's been a statute and this Court's never spoken on the issue, I think it would be prejudicial to say that we were supposed to assume that with 1st District and Supreme Court opinions on point that we were supposed to file when they say we were supposed to file. So, my indication or my argument is even if there was some type of confusion, maybe this Court can clarify what the rule is, but we shouldn't be punished by not being omnipresent or omniscient to figure out what the rule was and that we should be able to go back for a full audit. Now, a couple other points. This Marshall case, even if you go with the approach that the statute modified it and this Camper case and the Oshawa case are correct, even the statute still has an exception for fraud, accident, or mistake right in the statute. And if you go back and look at Marshall, there's kind of some broad language in the Supreme Court opinion that talks about going to where you can attack the final report even if there have been interim reports or accounts approved as if you don't even need fraud, accident, or mistake. But they clearly say that that's one ground for it and that did get carried forth in the statute. So, the first time we argued this to the trial judge, we only had one count and it was basically here's what happened. We didn't specifically say that our theory was that there had been some mistake or accident somewhere in the record. So, on the final report, were you in court objecting to that? Right. That's what we ultimately filed. Actually, our first filing on behalf of Bress was- Was it the hearing? Right. They proposed their final report. We filed objections to it. They moved to strike our objections. The objections were stricken with leave to amend. That's when we came in with the second and the third count. On the second count, we specify grounds, which, again, I've said about 20 times in my brief. I apologize for that. But you have to take a look. It's a 2-6-15 motion. What we put in our pleading has to be liberally construed in our favor, and this is not the time at this restitutive kind of stage to argue whether we were legally or factually sufficient. They were just saying we were too late. So, we do have allegations of mistake in count two. We also have allegations of mistake tied to about seven specific transactions that we allege, and, again, those have to be taken as true at this point. So, ultimately, what I'm asking the court to do is to reverse the restitutive decision because clearly counts two and three, even under the statute, given exception for mistake or accident, we've alleged mistake or accident, so those counts have to come back in our view. Now, in addition, I guess as an alternative argument, I want to make sure I have this clarified because when I went back and looked at my brief, I wasn't too sure about it. We had a mistake, and, of course, we had a trust as well. One of the arguments we had made is that Rule 304b1 that says you must appeal in a guardianship or a state from a ruling that finally resolves one claimant's particular issue in a case, doesn't use the word antrust. Now, I know there's some cases, I think there's a division on that between the appellate districts as to whether if it's a trust case, whether that 304b1 language applies because it doesn't really say trust, it says other similar proceedings. But let's just assume for a minute that the other side is right and that trusts aren't dealt with by the 304b1 language. My problem with it is you still have to look at the trust statute. I don't think the Supreme Court rules can negate a claim that's still running under the trust statute. What I mean by that is this. If you look at their motion to strike, they agree that until an accounting in January of 2015, their previous one was in March of 2012. The statute says you have to, as the trustee, do annual reports. So adding two and two together here, there were no accounts for 2012, 2013, and 2014, which would have meant, at best, the accounting in January of 2015 would have had them bend the accounting for those three years. My alternate position then is since we had three years from when the last accounting was done for that period and that wasn't done until January of 2015, that would have meant we actually had until 2018. The time hasn't even run to attack that at this point. So I think you have to look at the overlay of what the statutory right that Mr. Bretz had under 760 ILCS 511, and that tempers anything else that is involved in the particular, as I said, kind of a mishmash of the crossroads of the Program Act, the Trust Act, Rule 304. The cases that they cite in their brief, I'll just be real brief on, they seem to have cases where it's been like the denial of someone's claim, and here we're saying that these are the granting of claims, and you really have to wait until it ends to see. I don't think, and that's what this Herlinda case says, you shouldn't be having piecemeal litigation or appeals every time there's an accounting. That would mean in a case like this we'd be on our seventh appeal here by now. I really think that the rule against or the concept against piecemeal appeals should dictate that you do go and wait until the end when you're dealing with the granting of fees or claims. Yes, along that line, there was a settlement with some objectors back in 2015, right? A settlement of the will contest, will and trust claims. Which related to, was your client involved in that settlement? Not Mr. Bratz. I represented one of the four who had been kicked out of the... And where was Mr. Bratz? Was he involved in that? No, he was not involved in that at all. What we had is we had 15 beneficiaries at one time, then there was an amendment that kicked four of those people out, left 11. The settlement was between basically the four people that I represented to try and get back in the equivalent of their 115th that they had before the, what we said was undue influence that caused the amendment that went from 15 to 11. Does that make sense? It may not make sense, but that's what happened. So I was technically involved with just a different group of people, and then afterwards on behalf of Mr. Bratz. So unless the court has any questions, I think everything is laid out pretty well in the briefs. I think we should, again, back to the... My final word is that this is only a rescue to cut a case, and if mistake and accident is an exception, counts two and three should at least come back. They haven't argued that I know of until kind of in their brief here that maybe we didn't allege everything we should have in the right manner. I think the case law and the statutes that we cite in the petition itself show the basis for asking for an audit and an inventory and a discovery, and to me it seems too late for them to come in when we're at this stage and say, well, now the pleading doesn't have a factual basis to it. If that's what we get down to, I'm going to submit again under the authorities I cite that you can't ship horses in a stream if they argue that it was not factually sufficient as well as rescue to cut it. We should have asked for leave to amend. It's too late to come up with that theory now. I'll give you guys two minutes. Do you agree that Canfor caused abortions to support the fraud business decision? Oh, certainly. And did I miss it? Did I miss it somewhere? I didn't see that. Did I skip, miss over? I didn't see that in your briefs. Well, no, my point is it's not that Canfor doesn't say what it says, and that's the case that relies on the Klauschberg case. What I'm saying is if you look at Canfor, they get down, they say, in making this ruling we disagree with the court in Berger, which is a First District case. I didn't see that discussed in your brief. And I'm reminded that you've got a duty to disclose law. Oh, well, yeah. Well, he cited it. I think my point only was is that there was authority that went to the contrary. I may not have used it in name, but I meant. . . Well, I just thought I would mention that lawyers have a duty to point the court to law that's contrary to their position and either distinguish it or argue it's bad law. But it's not. . . Well, he wasn't trying to pretend. I was maybe just not using it by name. I said everything that they, all their cases, dealt with different issues. Okay, I take the court's admonition to heart. Thank you. Good afternoon. Good afternoon. If it pleases the court, what I'd like to do is spend just a brief comment or two on some of the factual basis that I think is not fully explained when I was rereading the briefs and so on, and I realize the court has gone through the pleadings and so on. In this situation, Roy Green executed a pour-over will, which left after one bequest of a tractor to his brother, everything into a trust. And he signed the pour-over will and trust, and in that trust, he cut out his brother. And into that same trust, approximately the same date, he deeded all of his farmland, which was in tenants in common with his brother. Within weeks, there was a voluntary partition between the two brothers and their trusts, and deeds were exchanged between the decedent's trust and the brother's trust. Roy Green goes on and passes away subsequently in around 2006. The will was admitted, and that one tractor was delivered, pursuant to the terms of the will, to the brother. The will contest was filed by the brother. The doctrine of election knocked the brother out. It came to this court on appeal.  The second will and trust contest was filed. The trustees recognized an issue. If, in fact, that trust was set aside as being due to undue influence or mental incapacity, what would happen to all the real estate, which was basically the sole asset in that trust? You had exchange of deeds after the trust was executed. You had deeds into a trust that might be declared invalid. So there was a citation to discover and recover assets filed by the trustees in the probate case, saying, let's freeze the assets, both of the decedent and of the brother, until we sort out whether or not we've got valid trust here or not. So that was the first step where the trust and the probate estate, which had the CDs and so on of the decedent, became pretty much involved. First was the will and trust contest itself. Second was the citation to discover assets. The third one was on the death of a disabled brother that the decedent had protected in his trust. There were two other brothers to the decedent. One was disabled. And on his death in 2011, the trustees said, we're now at an all-time high in real estate values. We need to sell in case there's a dramatic decline in value. And they approached the court through a petition for sale. And they held an auction sale pursuant to court order. On the report of sale, when it was approved, the judge said, in the court order approving it, you will retain the proceeds of this auction sale with two exceptions, expenses of sale and taxes attributable to the sale proceeds. It was locked up by the probate court. It was in court. It wasn't being privately administered outside the courthouse by the trustees. It was specifically within that probate proceeding. Advance forward from about 2011 to 2015, and there is finally, from 2006 to 2015, a joint motion filed in court to settle the will and trust contest. And the trustees and the executor say, and are looking at the statutes 24-2 and the Trusts and Trustees Act and saying, how do we bind all the beneficiaries? The Probate Act says under 24-2, yes, you can get binding if you give notice to the interested beneficiaries. And it even says if you've got a trust, you don't have to give notice to the beneficiaries, but you give notice to the trustee. That's in 24-2. But if you give notice to all the trust beneficiaries, then everybody who gets notice is bound. So the probate side, the executor, files a current accounting from 2006 all the way through 2015, and the co-trustees say, okay, the Trusts and Trustees Act says every year, yes, you've got to do a current account, and you mail that to the income beneficiaries. Well, Sam, the disabled brother of the decedent, didn't die until 2011, and in 2012 you had the first current account. Now, the individual, the attorney who was handling it, left our office, and so unfortunately the current account wasn't mailed for the subsequent year. But there's no provision in the Trusts and Trustees Act, one way or the other, about going to court. And it doesn't prohibit it. So the trustees prepare an accounting from 2006 all the way through 2015, and they file it at the same time. So you have joint motion on the Will and Trust Contest settlement. With that settlement being given notice to all the trust beneficiaries, because their interests are affected by it, the amount of assets in that, along with two current accounts, one from the executor and one from the trust. All those are in the mail. They've been proof of service. It's set for hearing April 24 of 2015. No objections were filed. Two separate orders were entered. That covered all the open questions of both the estate and trust as of that date, through the accountings and through the settlement. All that transpired subsequent to the April 24 was on the 27th of April, those orders were mailed to all the trust beneficiaries, including Mr. Bretz. On the 29th of April, entry of appearance was filed by Mr. Reaven on behalf of John Bretz. Nothing was done for the balance of those 30 days subsequent to April 24 in the way of a motion to reconsider or an appeal. And I believe 24-2 says if you go through that procedure, at least as to the probate, and you give notice, that order is binding on everyone receiving the notice. And I would argue that the same is true on the trust. Because of 304B1, which says if you've got a final order in an estate or a guardianship or similar proceeding, then it's appealable. And all the issues in those two cases, in the will and trust contest portion and in the probate and trust administration were before the court and resolved on April 24. The only thing that the final report did was it updated and provided an outline of all the different actions that were covered, including reference to the estate tax audit that occurred, the sale of the ground, and provided hourly timeframes of what the executor and co-trustees and attorneys had done since April 24. In other words, it was in effect a supplemental. But it carried the normal probate paragraphs outlining all claims were paid, all the personal property was distributed, and so on. It wasn't until, okay, and the final income tax return was filed, or the income tax return was filed. It was set for hearing in September, or filed in September, and objections were filed for the first time by Mr. Bretz. There was a motion to strike filed by the executor and co-trustees, raising the issue of race judicata. Here's where we get into 2.615 and 2.619. 2.615 attacks the sufficiency of the pleading as a cause of action. We conceded that he had a right to review from March 10, which was the ending date of the approved account, April 24. He did have a right to review the actions of the executor and co-trustees from the period covered by the April 24 order through the filing of the final report. Can't get around that. He had a right to. 6.19 gives you the right to raise race judicata and other affirmative matter to the court. The motion to strike was not a motion to dismiss and throw him out of court. It was a motion to strike under 6.19. It may be incorrectly referred to under 6.15, but the substance, when you look at the rules, it has to be under 6.19, and that's where we find it. Every motion to strike, the amended motions, are all raising the issue of race judicata. And because it's under 6.19, when he finally amends the objections and inserts accident, mistake, and fraud in order to circumvent the race judicata, one of his allies, okay, count two, count one is the general, count two is the judge in reviewing this account made a mistake. He had to make a mistake. And therefore, mistake in his theory of approving the accounting has to count and knock it out. Count three says, okay, in this objection, we have had an opportunity to do some digging. And there are six very specific items that create, quote, discrepancies. If you look at the accounting, one of them says, okay, there's an entry in the accounting. There are three CDs listed. And on the left side of the page, the CD number is there, and then you've got like $150,000 and $60,000 and so on. But in the right-hand column where the dollars and cents are, you have $411,000, and the three dollar amounts next to the CD account numbers don't jive with the 411. The reason for that was the amounts in the left-hand column were what the face amount of the CD was, and it did not take into account accumulated or accrued interest. These are alleged as discrepancies. And he's saying that he found them out afterwards. Well, these are the same six items that we put in an affidavit, which were raised by plaintiff's counsel in the will and trust contest, different counsel than Mr. Reva. The identical same six, quote, discrepancies. And he's saying in count three, these were raised by other parties, but they were never covered. Well, the affidavit shows that three weeks before the April 24 hearing, there was a response to those six items of discrepancy, quote, unquote, resolving those, and there were no other objections. There were no objections at the April 24 hearing. He had an opportunity to do his due diligence the day he got the notice, and he didn't. And that's where we find ourselves. I'm running out of time. If you have questions in regard to cases or anything, I would be pleased to. I have a question with regard to the motion to strike. I thought I heard you say that it was filed pursuant to 2615. I've looked at the motion to strike, and I don't think it's labeled. It is not labeled. There was reference to 2615 in a court order. I would note that in the motion to strike, there are paragraphs that are deemed irrelevant, and we argue to strike those, and that's under 615. I think you can argue that relevance and materiality are under 615. But the motion itself is not labeled. It's not labeled. And did Mr. Brents object to that? Did he ask for clarification? Not that I can recall, Your Honor. In regard to the affidavit of Jane Hartley Pratt in regard to the six items of discrepancy, that was admitted by the court, and I don't believe that there was an objection raised. So the final settlement, this was a really complicated situation, a complicated estate. The final settlement was mediated by a judge. Yes. And I'm guessing that the accounting was part of that final settlement, resolving all the issues, is it? That's the way we approached it. They were both filed on the same day. The accounts were filed on different days than the joint motion. Both were addressed on April 24th. Yes. All of those issues were addressed on April 24th. And when the objector received notice of that hearing on April 24th, wasn't there a nice letter that said, hey, if you have any questions, you've got to let us know beforehand. And we also in that letter said, in the event the court deems it appropriate, they can continue it in light of objections. Something along that line. In terms of the final settlement, would they have bound Mr. Bretz? I would sure hope so. He was given notice, and that was one reason for giving notice to all the trust beneficiaries of the settlement. I think I saw language in either the court order. I don't think the settlement agreement is in the record. But doesn't the court order say that, you know, by agreeing to this final settlement, you're giving up your right or your ability to contest any of the issues resolved by this final settlement? I believe it does, Your Honor. Thank you. Thank you. Thank you. Mr. Rebus, a rebuttal? Yes. First of all, Justice Wright, we kind of had two different things going. Remember we had the 15 people, Bretz was one of them. Then we had the four people that were kicked out of the 15 to give you 11 people. And then our people did not really get back. The four original people we represented did not get back in. Your person is Bretz. My person is Bretz. He's one of the 15. The four that were kicked out of the 15, they never really got back into the 15. They just reached a monetary settlement. The settlement is only asked to those four parties? Pardon? You're saying the settlement is only asked to those four parties? No. I think what you are contemplating is that somehow Mr. Bretz, yes, he would have had to have approved or at least did not object to the trustees settling the case to give money to the other four people. I agree with that. But I don't think there's anything in any of the notices that I've seen that says that gave specific warning to Bretz or any of the other 11 people of what would happen if they did not object to the hearing. But I'd have to look into that. Now, real quick, can I clarify my answer to Justice Schmidt's question? You asked me would the Canfor case have supported the trial judge's ruling? Yes, under Rule 304B, but there's still other cases. I don't want you to think that I'm conceding the fact that we don't have any case that she followed the correct law because we still have the first district cases and the fourth district. I didn't ask you to concede anything. Okay, so I just want to make sure. Because Canfor in this Auschwer case, I know you're probably butchering the name, but right in that opinion it says that the plaintiff in that case is not raising any allegations of fraud, accident, or mistake. So, again, I'm back to the statute. It's right in here. I mean, it says if notice is given, but if you have fraud, accident, or mistake. So what's the fraud, accident, or mistake? Okay, fraud, accident, or mistake is set forth in our pleading. There's two different things. One, that the trustees were paying and convincing the judge that the trustees were going with schedules, not hourly rates under oath or what a reasonable hourly rate would be. They were spending money based on certain tables that people had said this is roughly a percentage of the estate, so you can go with that. And that the judge would have been approving basically. There was an opportunity to raise that on April 24th, right? I suppose, but I think the point is accident, fraud, or mistake. Aren't you required to show due diligence for failing to raise those issues? Well, I think we say we did because we knew that they were going to be shortly filing their report. I mean, we went from April until about September. Frankly, I thought the report was going to be filed within a few months because the case had been going for so long, and I guess it took a little longer than I think we had thought. On the 29th day when that report wasn't filed, nothing was done. Right, because we thought under the statute, if we had a mistake or accident, or under the trust act, we had three years. Or under these other cases, and Marshall would all say we could wait. Does that make any sense to you? Could that really mean? So you've got an estate trust that's been probated for six, seven, a long time. Then they go through and they come in with these audits and reports. And then you say, but I can come in three years later and say on this multi-million dollar trust, I can come back and object because even though I didn't object to these alleged mistakes at the time, I can come back and say, well, there was some mistake over some insignificant amount of money, and so we've got to go back and do these audits all over again. I think, first of all, I qualify if it's something that's really de minimis, but I don't think our allegations are that. So if there's a sufficient amount at stake. And, again, if we go back and if they want us to amend, if the judge thinks we need to amend our pleading, or if they want to argue all these different offenses they've now thrown into their brief, on the merits, that's all fine. But we alleged enough, I think. And if you take a look, another thing I want to mention. If a trustee submits a bill, and it's not detailed as you say the statute says it ought to be, but nobody objects to that, is that a mistake? Or is that a waiver of any mistake by the non-objecting? Well, I think what we're saying is that the trial judge was led to approve the fees by the mistake that the trustees were using the wrong method of paying bills, for one thing. But nobody objected to that on April 24th. Nobody objected. Right. Well, I agree. What I'm saying is. So even if there was a mistake, was it not waived by, I mean, litigation's got to end sometime. You know, I know lawyers hate to hear that. But all good things must end. And so if there's a mistake, and you don't object to it, then you read that statute, say we can come in three years later and object now when you have the opportunity, or Bretz did, on the 24th of April. But the statute doesn't say if it's waived. It says if there's accident, fraud, or mistake. But you're saying, and you said that means any mistake, even mistakes that would have been patently obvious because the bills were what they were, and nobody objected to them. And so you're saying that if we've got to read that language to take the concept of waiver out of civil procedure, does that make any sense to you? Because if you're right, like I said, sorry to my friends at the Bar Association, but like I said, sometimes litigation's just got to end. And you're reading that to say I can sit silent, let the court approve that, and then come in three years later and say I want an audit back the day one. Because there's a mistake here. What I'm saying is waiver is an affirmative defense. And back to this whole confusion, I want to mention one thing real quick. I know it's way past my time, but whatever the pleading did or did not say, I know when we filed our response brief on their motion to strike, we were citing all the 2-6-15 rules. They never said this was a 2-6-19 motion that would have allowed them to inject affidavits. You don't get to dictate whether it's 2-6-15 or 2-6-19. But obviously the trial judge who rules agreed with me that it was under 2-6-15. What leads you to say that? Because I think her order said that they drafted that this was a 2-6-15 motion. So even though they're brief, even though their motion may not have said 2-6-15, they're the ones that prevailed when they wrote the order that the judge approved and used 2-6-15, that tells me that that's what they thought their motion was. We review a trial judge's judgment, not his reasoning, right? I agree. But I would caution that to convert from 6-15 to 6-19 midstream is to now at this point have your honor saying this all along was a 2-6-19 when everybody thought it was 2-6-15. Well, it was a motion to strike based on raised due to cut. And it was not labeled. And you could have moved, you could have motioned that that motion has said, hey, he's got a label of fish or fowl here. So you had a right to object to the motion itself, and you didn't do that, right? And to add much more specificity, what exactly are they saying? Are they arguing it's 2-6-15, failed state cause of action, or 2-6-19, other affirmative matter? Well, my final word would be we filed. They're the moving party. They should disclose that the rule on hybrid motions I think even says you've got to tell if you're 6-15, 6-19. But failure to designate doesn't defeat the motion. Failure to designate does not defeat the motion. It's something that you can raise and have it clarified. But I want to direct your attention to the settlement agreement. Paragraph 9, or the settlement order, the order approving the settlement agreement, says a settlement proposed to the court terminates each and every issue raised or which could have been raised in is related to or arising out of case number 06-P35 and will result in a full, complete, and final settlement of all issues, including the dismissal of each and every claim of each plaintiff with prejudice. And then Paragraph 12, the judge talks about – I'm sorry, Paragraph 13. The judge talks about that everyone was given a drop-dead date of April 10, 2015, to file objections, and the judge had reviewed the file and found no objections. Isn't your claim bound by this order? The settlement order? Well, for all the reasons I've said, the Marshall case, these other cases, the Trust Act, the rule about fraud and accident and mistake, I think we have it up and again. So what does this language tell you? Did Mr. Bratz know that he had to file objections by April 10? I really can't tell you what he's stating at this point. Okay. But, again, for reasons stated, I think we've alleged enough. And, again, if they have all these arguments about waiver or this is too small of an amount or something, then we can go back and sort that out. But I read this as a 2-6-15 motion, and our allegations should stand. Any questions? Thank you. Thank you both for your arguments here this afternoon. This matter will be taken under advisement. Written disposition will be issued.